# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **LORI ANN GONZALEZ, individually and on behalf of others similarly situated,**<br>                   **Plaintiff,**<br><br>                   **v.**<br><br>**COMENITY BANK, DOES 1-30,**<br>                   **Defendants.** | **CASE NO. 1:19-CV-00348-AWI-EPG**<br><br>**ORDER ON PLAINTIFF'S MOTION TO REMAND**<br><br>(Doc. No. 11) |

## INTRODUCTION

On January 29, 2019, Plaintiff Lori Ann Gonzalez ("Gonzalez") filed a putative class action in Fresno County Superior Court alleging that Defendant Comenity Bank ("Comenity") routinely violates California statutes relating to identity theft in connection with credit cards branded for a clothing retailer called "The Limited." Comenity removed the action to this Court on March 14, 2019 and Gonzalez sought remand. For the reasons set forth below, Gonzalez's motion to remand will be denied.

## BACKGROUND

The Complaint, as filed in Fresno County Superior Court, alleges as follows:[1]

In 2017 or 2018, Gonzalez began receiving telephone calls from Comenity to collect on a

---
[1] The Court did not have cause to consider the materials referenced in Comenity's request for judicial notice (Doc. No. 17-2) or the materials referenced in Gonzalez's requests for judicial notice (Doc. No. 13 & Doc. No. 20) in deciding this motion. The parties' requests for judicial notice are therefore denied as moot.

credit card account issued by Comenity and branded for "The Limited." Doc. No. 1, Ex. A (Complaint) ¶¶ 13-18. In those telephone calls, Gonzalez verbally informed Comenity that she had not opened the account, but Comenity failed to inform Gonzalez that claims of identity theft must be in writing. Id., Ex. A ¶ 22. In August 2018, Gonzalez mailed Comenity a letter (along with a police report) stating that she was a victim of identify theft with respect to the account in question and requesting "the account application …, any signatures associated with the account and any bills associated with the account." Id., Ex. A ¶¶ 23-26. Comenity received that mailing on September 5, 2018. Id., Ex. A ¶ 27. On September 17, 2018, Gonzalez sent Comenity a copy of the August 2018 mailing at a second address. Id., Ex. A ¶ 28. Comenity received that mailing on September 20, 2018. Id., Ex. A ¶ 29.

Comenity sent Gonzalez a letter dated October 7, 2018 rejecting her claim of identity theft without providing the materials Gonzalez requested in her mailings of August 2018 and September 17, 2018. Doc. No. 1, Ex. A ¶ 30. In December 2018, Gonzalez sent another letter to Comenity asking "what categories of identifying information were used to open the account" and again requesting copies of the application and other documents associated with the account, which, Gonzalez contends, Comenity was required to provide under Section 530.8 of the California Penal Code. Id., Ex. A ¶¶ 31-34. Comenity received that letter on December 29, 2018 but did not provide Gonzalez with the requested materials. Id.

Gonzalez further alleges: (i) Comenity "maintain[s] a pattern and practice of failing to inform debtors who make oral claims of identity theft that the claims must be in writing," Doc. No. 1, Ex. A ¶ 22; (ii) Comenity "maintain[s] a pattern and practice of not providing requested information and documents as required under California Penal Code section 530.8," id., Ex. A ¶ 35; (iii) Comenity's practices "present a continuing threat to [Gonzalez] … and members of the public unless enjoined or restrained," id., Ex. A ¶ 37; (iv) Comenity's "conduct in response to oral claims of identity theft was and is persistent, frequent, willful and knowing," id., Ex. A ¶ 51; (v) Comenity's "conduct in response to … requests for information and/or documents was and is persistent, frequent, willful and knowing," id., Ex. A ¶¶ 54-55 (also alleging that Comenity has "willfully and knowingly violated Penal Code section 530.8, subdivision (a)"); and (vi) Comenity

2

"failed to diligently investigate [Gonzalez's] notification of identification of identity theft" and "continued to pursue the claim against [Gonzalez] after being presented with facts underlying [Gonzalez's] claim of identity theft." Id., Ex. A ¶¶ 69-70.

Based on these factual allegations, Gonzalez alleges four claims against Comenity: (i) "Violations of California Civil Code, § 1788.18's Requirement to Notify Oral Identity Theft Claimants that the Claim Must Be in Writing"; (ii) "Violations of California Penal Code, § 530.8, subd. (a)"; "Violations of California Business & Professions Code, §§ 17200 et seq.," and (iv) "Action to Establish Identity Theft under California Civil Code, § 1798.93."[2] Doc. No. 1, Ex. A, ¶¶ 47-70.

Gonzalez brings the first three causes of action on behalf of herself and putative classes, and brings the fourth cause of action solely as an individual. Doc. No. 1, Ex. A, pp. 7-10. As to the First Cause of Action, for violations of Section 1788.18 of the Civil Code, Gonzalez prays for "actual damages according to proof and statutory damages to be paid to [Gonzalez] and each Oral Identity Theft Claim Class member, and attorneys' fees and costs." Id., Ex. A, Prayer for Relief ¶ 1. As to the Second Cause of Action, for violations of Section 530.8 of the Penal Code, Gonzalez prays for "actual damages according to proof and a penalty as authorized by Penal Code section 530.8, subdivision (d)(2), to be paid to Plaintiff and each Information Request Class member; injunctive relief and such other equitable relief as the Court may deem appropriate; and reasonable attorneys' fees and costs." Id., Ex. A, Prayer for Relief ¶ 2. As to the Third Cause of Action, for violations of Section 17200 et seq. of the Business & Professions Code, Gonzalez prays for "restitution for [Gonzalez] and all Class members, injunctive relief and such other equitable relief as the Court may deem appropriate; and an award of attorneys' fees and costs pursuant to Code of Civil Procedure section 1021.5." Id., Ex. A, Prayer for Relief ¶ 3. And as to the individual Fourth Cause of Action, to establish identity theft under Section 1798.93 of the Civil Code, Gonzalez seeks "declaratory relief, injunctive relief, and such other equitable relief as the Court may deem

---

[2] Section 1788.18 of the Civil Code is a provision of California's Rosenthal Fair Debt Collection Practices Act ("Rosenthal Act") and Section 1798.93 is a provision of the California Identity Theft Act ("CITA"). See Cutler ex rel. Jay v. Sallie Mae, Inc., 2015 WL 1909482, *2 (C.D. Cal. Apr. 24, 2015). The cause of action under Section 1788.18 is sometimes referred to herein as the "Rosenthal Act claim" and the cause of action under Section 1798.93 is sometimes referred to as the "CITA claim."

appropriate; actual damages according to proof; a civil penalty; and attorneys' fees and costs." Id., Ex. A, Prayer for Relief ¶ 4.

On March 14, 2019, Comenity removed the case to this forum based on diversity of citizenship pursuant to 28 U.S.C. § 1441(a)-(b). Doc. No. 1 ¶ 6. The notice of removal asserts that Gonzalez and Comenity are citizens of different states and that "the total amount of individual relief to which [Gonzalez] claims she is entitled if she prevails in this action exceeds $75,000," id., Ex. A ¶¶ 2-4, including actual and statutory damages for the Rosenthal Act claim, id., Ex. A ¶ 9; damages and penalties for claim under Section 530.8 of the California Penal Code, id., Ex. A ¶¶ 10-12; actual damages, injunctive relief and "a civil penalty" for the CITA claim, id., Ex. A ¶ 14; and attorneys' fees. Id., Ex. A ¶ 15. Gonzalez now seeks remand.[3]

## **PLAINTIFF'S MOTION TO REMAND**

Defendant's notice of removal asserts that Comenity and Gonzalez are citizens of different states and that Gonzalez stands to recover "an amount greater than $75,000" if she prevails on all of her claims – factoring in the maximum penalty of $1,000 for the Rosenthal Act claim, the penalty for the Section 530.8 claim (which accrues at $100 per day), the maximum penalty of $30,000 for the CITA claim, and attorneys' fees. Doc. No. 1, Ex. A ¶¶ 9, 12, 14-16.

In moving for remand, Gonzalez does not dispute that she and Comenity are citizens of different states but contends that the Court lacks subject matter jurisdiction over this action – and that remand is required under 28 U.S.C. § 1447(c) – because Comenity has not met its burden to show that the amount in controversy exceeds the $75,000 jurisdictional threshold set forth in 28 U.S.C. § 1332(a)(1). Doc. No. 12 at 7:15-17. Specifically, Gonzalez argues that using the maximum penalty for the Rosenthal Act claim and the maximum penalty for the CITA claim to calculate the amount in controversy, as Comenity proposes, is improper because the award amounts are discretionary and the Complaint does not expressly seek – or allege facts to support –

---

[3] On January 25, 2019, Gonzalez filed another putative class action in Fresno Superior Court against Comenity Capital Bank alleging facts and causes of action similar to the facts and causes of action in this case in connection with credit card accounts branded for the retailer "Overstock.com" and credit card accounts branded for the retailer "Blair." Comenity Capital Bank removed that action to the United States District Court for the Eastern District of California on March 14, 2019. The Court issued an order relating that case to this case, under the caption *Lori Ann Gozalez v. Comenity Capital Bank*, 1:19-cv-00342-AWI-EPG. Doc. No. 8. Gonzalez filed a motion to remand in that action as well.

the maximum award as to either claim. Doc. No. 12, Part 3.B.(1). Further, she argues that Comenity improperly assumes that the penalty under Section 530.8 of the Penal Code will continue to accrue through trial. Doc. No. 12, Part 3.B.(2). According to Gonzalez, the Section 530.8 civil penalty will stop accruing (well in advance of trial) once Comenity fulfills its obligation to produce documents relating to the account at issue in discovery. Id. at 13:17-14:19. Finally, Gonzalez contends that Comenity's estimate of attorneys' fees cannot be credited because it overstates the incremental costs associated with litigating Gonzalez's individual CITA claim and the underlying methodology is unsound. Id., Part 3.B.(3)-(4).

*Comenity's Opposition*

Comenity argues that using the maximum penalty for the Rosenthal Act claim and the maximum penalty for the CITA claim to calculate the amount in controversy in this action is proper because recent Ninth Circuit decisions make it clear that the amount in controversy in a case encompasses all relief a court may grant on a complaint if the plaintiff prevails on all claims, Doc. No. 17 at 1:6-13, and because Gonzalez has not alleged – or otherwise indicated – that she is seeking less than the maximum penalty under either statute. Id. at 6:8-13. Further, Comenity contends that it is proper to assume the penalty under Section 530.8 of the California Penal Code will continue to accrue through completion of the trial (at the statutorily prescribed rate of $100 per day) because the amount in controversy is to be estimated at the time of removal, without regard to future events (such as settlement or discovery productions) that might reduce the amount in controversy after removal. Id. at 12:3-13:3. Finally, Comenity argues that at a rate of $300 per hour, Gonzalez could recover attorneys' fees in the amount of at least $28,725 on her individual CITA claim alone. Id., Part III.D.

*Legal Standard*

Under 28 U.S.C. § 1441, "[a] defendant generally may remove an action filed in state court if a federal district court would have had original jurisdiction over the action." Chavez v. JPMorgan Chase & Co, 888 F.3d 413, 415-16 (9th Cir. 2018) (citing 28 U.S.C. § 1441(a) and Gonzales v. CarMax Auto Superstores, LLC, 840 F.3d 644, 648 (9th Cir. 2016)). The Ninth Circuit "strictly construe[s] the removal statute against removal jurisdiction," and "[f]ederal

5

jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992) (citations omitted).

There are two bases for federal subject matter jurisdiction: (1) federal question jurisdiction under 28 U.S.C. § 1331, which gives federal courts original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States"; and (2) diversity jurisdiction under 28 U.S.C. § 1332, which gives federal courts original jurisdiction where the amount in controversy "exceeds the sum or value of $75,000, exclusive of interest and costs" and there is "complete diversity among the parties." See Chavez, 888 F.3d at 415 (citing Corral v. Select Portfolio Servicing, Inc., 878 F.3d 770, 774 (9th Cir. 2017)). Where a putative class action is removed on the basis of diversity jurisdiction under 28 U.S.C. § 1332, courts examine "only the claims of named class plaintiffs for purposes of the amount-in-controversy requirement."[4] Gibson v. Chrysler Corp., 261 F.3d 927, 941 (9th Cir. 2001), holding modified by Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546 (2005) (citing Supreme Tribe of Ben–Hur v. Cauble, 255 U.S. 356, 366–67 (1921)); see also Pruell v. Caritas Christi, 645 F.3d 81, 83 (1st Cir. 2011) ("The usual rule in class actions is that to establish subject matter jurisdiction one looks only to the named plaintiffs and their claims.").

The Ninth Circuit has "defined the amount in controversy as the 'amount at stake in the underlying litigation.'" Gonzales, 840 F.3d at 648–49 (quoting Theis Research, Inc. v. Brown & Bain, 400 F.3d 659, 662 (9th Cir. 2005)); see also Chavez, 888 F.3d at 417 (explaining that the amount in controversy includes all amounts "at stake" in the litigation at the time of removal, "whatever the likelihood that [the plaintiff] will actually recover them"). It "is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability." Lewis v. Verizon Commc'ns, Inc., 627 F.3d 395, 400 (9th Cir. 2010) (citation omitted). "In that sense, the amount in controversy reflects the *maximum* recovery the plaintiff could reasonably recover." Arias v. Residence Inn by Marriott, 936 F.3d 920, 927 (9th Cir. 2019) (citing Chavez, 888 F.3d at 417) (emphasis original).

"Where … it is unclear or ambiguous from the face of a state-court complaint whether the

---
[4] Comenity does not base removal on the Class Action Fairness Act ("CAFA").

requisite amount in controversy is pled, the removing defendant bears the burden of establishing, by a preponderance of the evidence, that the amount in controversy exceeds the jurisdictional threshold." Fritsch v. Swift Transportation Co. of Arizona, LLC, 899 F.3d 785, 793 (9th Cir. 2018) (quoting Urbino v. Orkin Servs. of Cal., Inc., 726 F.3d 1118, 1121–22 (9th Cir. 2013)) (internal quotation marks omitted). "[A] removing defendant is not obligated to research, state, and prove the plaintiff's claims for damages," Korn v. Polo Ralph Lauren Corp., 536 F.Supp.2d 1199, 1204–05 (E.D. Cal. 2008) (citation and internal quotation marks omitted), but "[c]onclusory allegations as to the amount in controversy are insufficient." Matheson v. Progressive Specialty Ins. Co., 319 F.3d 1089, 1090-1091 (9th Cir. 2003) (citation omitted). "[T]he defendant must provide evidence establishing that it is 'more likely than not' that the amount in controversy exceeds" the jurisdictional threshold for diversity jurisdiction. Sanchez v. Monumental Life Ins. Co., 102 F.3d 398, 404 (9th Cir.1996) (citations omitted).

"In assessing the amount in controversy, [courts] may consider allegations in the complaint and in the notice of removal, as well as summary-judgment-type evidence relevant to the amount in controversy," Chavez, 888 F.3d at 416 (citation omitted), including "supplemental evidence later proffered by the removing defendant, which was not originally included in the removal notice." Korn, 536 F.Supp.2d at 1205 (citing Cohn v. Petsmart, Inc., 281 F.3d 837, 840 n.1 (9th Cir. 2002)).

## ANALYSIS

Neither party disputes that the diversity requirement is satisfied in this case, so the only issue for the Court to resolve on this motion is whether it is "more likely than not" that the amount in controversy – in connection with Gonzalez's individual claims – exceeds the jurisdictional threshold of $75,000. See Sanchez, 102 F.3d at 404. In making that determination, the Court considers each aspect of the amount in controversy calculation in turn.

**I. Statutory Penalties Under the Rosenthal Act and the CITA**

Two of the statutes at issue in this action – the Rosenthal Act and the CITA – contain provisions that specify maximum penalties. The Rosenthal Act provides for a penalty ranging from a minimum of $100 to a maximum of $1,000, see Cal. Civ. Code § 1788.30, subd. (b), while

the CITA provides for a penalty of up to $30,000.  See Cal. Civ. Code § 1798.93, subd. (a)(6).

One of the key points of contention in this motion is whether the maximum penalties available under these statutes should be included in the amount-in-controversy calculation. Gonzalez contends that the statutory maximum penalties should not be included in the amount-in-controversy calculation because the Complaint does not expressly seek – or allege facts justifying – maximum penalties, and because Comenity has failed to meet its burden to show that maximum penalties will be awarded if Gonzalez prevails on her claims.  Doc. No. 12, Part B.(1).

Comenity, for its part, contends that it is proper to include maximum penalties in the amount-in-controversy calculation because, whether or not they are ultimately imposed, they are within the scope of relief that could be awarded and are, thus, "at stake" in the litigation.  Doc. No. 17, Part III.B.  Further, Comenity argues that Gonzalez has not disclaimed maximum penalties in this case and that the facts alleged in the Complaint could justify maximum penalties under both of the statutes in question.  Id.

The use of maximum statutory penalties in jurisdictional amount-in-controversy calculations was addressed by this district in *Korn v. Polo Ralph Lauren Corp.*, 536 F.Supp.2d 1199 (E.D. Cal. 2008).  *Korn* was a putative class action involving alleged violations of Section 1747.08 of the California Civil Code, which provides for "a civil penalty not to exceed two hundred fifty dollars ($250) for the first violation and one thousand dollars ($1,000) for each subsequent violation."  Cal. Civ. Code § 1747.08, subd. (e).  Defendant removed the action to federal court under the CAFA and, in seeking remand, plaintiff took the position that the $1,000 maximum penalty set forth in the statute should not be included in the amount in controversy because "the class plaintiffs could be awarded less than the maximum statutory penalty per violation."  Id. at 1205.  The court rejected that argument on the ground that it "overlook[ed] the critical distinction between the likely recovery per plaintiff and the actual issue before the court, the amount in controversy in th[e] litigation."  Id. at 1205 (citing Brill v. Countrywide Home Loans, Inc., 427 F.3d 446, 448 (7th Cir.2005)).  Further, the court found that the maximum penalty was properly included in the amount in controversy because plaintiff alleged that he and every other class member were "entitled to civil penalties in amounts up to one thousand dollars

8

1  ($1,000) per violation" and had not "stipulat[ed] that he [would] demand less than the maximum
2  civil penalty." Id. at 1205. In short, the court found that "[w]here a statutory maximum is
3  specified, courts may consider the maximum statutory penalty available in determining whether
4  the jurisdictional amount in controversy requirement is met," id. (citing Chabner v. United of
5  Omaha Life Ins. Co., 225 F.3d 1042, 1046 n.3 (9th Cir. 2000)), and that plaintiff could not "avoid
6  satisfaction of the amount in controversy by arguing that the class plaintiffs *may* be awarded less
7  than the statutory maximum." Id. at 1206 n.4 (emphasis original).

The finding in *Korn* as to the use of maximum penalties in amount-in-controversy calculations comports with – and is, indeed, compelled by – the findings in recent Ninth Circuit decisions relating to amount-in-controversy calculations, including *Arias*, where the Ninth Circuit found that "the amount in controversy reflects the *maximum* recovery [a] plaintiff could reasonably recover" on a complaint, Arias, 936 F.3d at 927 (emphasis original), and *Chavez*, where the Ninth Circuit found that the amount in controversy includes all amounts "at stake" in the litigation at the time of removal, "whatever the likelihood that [the plaintiff] will actually recover them." Chavez, 888 F.3d at 417. The Court therefore finds that the maximum penalty specified in a statute is properly included in a jurisdictional amount-in-controversy calculation where a plaintiff could reasonably recover that penalty. The amounts in controversy as to Gonzalez's claims under the Rosenthal Act and the CITA are evaluated accordingly below.

### a. Rosenthal Act Claim

Gonzalez alleges that Comenity violated the Rosenthal Act through a "persistent, frequent, willful and knowing" failure to notify debtors – including herself – that claims of identity theft must be submitted in writing. Doc. No. 1, Ex. A ¶¶ 51, 52. Gonzalez also alleges that she received multiple telephone calls from Comenity "seeking to collect" on the credit card account at issue here, id., Ex. A ¶ 18; that Comenity "maintains a pattern and practice of failing to inform debtors who make oral claims of identity theft that the claims must be in writing," id., Ex. A ¶ 22; and that Comenity's practices "present a continuing threat" to Gonzalez and others "unless enjoined and restrained." Id., Ex. A ¶ 37. In connection with this claim, Gonzalez prays for "actual damages according to proof and statutory damages to be paid to [Gonzalez] and each Oral

9

Identity Theft Claim Class members, and attorneys' fees and costs." Id., Ex. A at 10:21-24.

As noted above, Section 1788.30, subdivision (b), of the California Civil Code provides that a defendant will be liable for a "penalty" of up to $1,000 for "willfully and knowingly" violating the Rosenthal Act. Cal. Civ. Code § 1788.30, subd. (b). In *Lyon v. Bergstrom Law, Ltd.*, the court awarded a penalty of $250 under the Rosenthal Act because the defendant "left only a single infringing voicemail without any aggravating circumstances," 2017 WL 2350447, *10 (E.D. Cal. May 31, 2017), and in *Mejia v. Marauder Corp.*, the court found that the "plaintiff [was] entitled to $250 in statutory damages" where there was "only a single collection letter at issue." 2007 WL 806486, *11 (N.D. Cal. Mar. 15, 2007). At the other end of the spectrum, the court in *Mulvihill v. St. Amant & Associates* awarded the maximum $1,000 penalty on default judgment based on allegations that defendant had placed "fifteen to eighteen calls" to plaintiff, 2014 WL 1665229, *2, *5 (E.D. Cal. Apr. 24, 2014), while in *Washington v. City Title Loan, LLC*, the court imposed the maximum penalty of $1,000 on a mere finding that the plaintiff had "alleged and provided evidence that [the defendant] willfully and knowingly violated [the Rosenthal Act]." 2018 WL 4005447, *7 (C.D. Cal. Feb. 26, 2018).

While awards vary, the allegations in the Complaint (including, for example, the allegation that Comenity called Gonzalez on more than one occasion) appear sufficient, in light of relevant caselaw, to show that Comenity's conduct was willful and knowing and that Gonzalez "could reasonably recover" the maximum penalty under the Rosenthal Act in this action. See Arias, 936 F.3d at 927. Further, Gonzalez has not disclaimed the maximum penalty or otherwise limited her prayer under the Rosenthal Act, which expressly calls for "statutory damages."[5] See Doc. No 1., Ex. A, Prayer for Relief ¶ 1. Therefore, the Court finds that the Complaint puts the maximum penalty under the Rosenthal Act "at stake" in this action, see Chavez, 888 F.3d at 418, and assigns a value of $1,000 to Gonzalez's individual claim for a penalty under the Rosenthal Act for purposes of the amount-in-controversy calculation. See Morey v. Louis Vuitton N. Am., Inc., 461 F.App'x 642, 643 (9th Cir. 2011).

---

[5] The "penalty" set forth in Section 1788.30, subdivision (b), of the Civil Code is often referred to as "statutory damages." See, e.g., Marseglia v. JP Morgan Chase Bank, 750 F.Supp.2d 1171, 1180 (S.D. Cal. Nov. 12, 2010) (stating that "statutory damages under the Rosenthal Act are limited to $1,000 per plaintiff").

**b. CITA Claim**

The CITA provides for:

A civil penalty, in addition to any other damages, of up to thirty thousand dollars ($30,000) if the victim establishes by clear and convincing evidence all of the following:

(A) That at least 30 days prior to filing an action or within the cross-complaint pursuant to this section, he or she provided written notice to the claimant at the address designated by the claimant for complaints related to credit reporting issues that a situation of identity theft might exist and explaining the basis for that belief.

(B) That the claimant failed to diligently investigate the victim's notification of a possible identity theft.

(C) That the claimant continued to pursue its claim against the victim after the claimant was presented with facts that were later held to entitle the victim to a judgment pursuant to this section.

Cal. Civ. Code § 1798.93, subd. (a)(6).

Gonzalez alleges that she twice provided timely written notice to Comenity that "a situation of identity theft might exist," but that Comenity "failed to diligently investigate [her] notification of identity theft" and "continued to pursue the claim against [her] after being presented with the facts underlying [her] claim of identity theft." Doc. No. 1, Ex. A ¶¶ 23-32, 67-70. Based on these allegations, Gonzalez prays under the CITA for "declaratory relief, injunctive relief, and such other equitable relief as the Court may deem appropriate; actual damages …; a civil penalty; and attorneys' fees and costs." Id., Ex. A, Prayer for Relief ¶ 4.

Comenity cites a couple of cases in which the $30,000 statutory maximum was awarded to the prevailing plaintiff under the CITA. In *Washington*, the district court awarded the $30,000 statutory maximum penalty on default judgment based on a mere finding that "the FAC has sufficiently alleged a claim under the CITA." 2018 WL 4005447, *3-*4, *7 (C.D. Cal. Feb. 26, 2018). In *Seungtae Kim v. BMW Fin. Servs. NA, LLC*, similarly, the district court found that a jury award of $30,000 was "not excessive" because it "was within the statutory limit." 142 F.Supp.3d 935, 947 (C.D. Cal. 2015), aff'd sub nom. Kim v. BMW Fin. Servs. NA LLC, 702 F.App'x 561 (9th Cir. 2017). Gonzalez, for her part, cites *Heidorn v. BDD Marketing & Management Co., LLC* to show an award of a much smaller amount – just $3,000 – on default judgment. Doc. No. 12 at 11:3-6. That $3,000 award, however, is predicated not on the CITA but on California's Shine the

Light Law, California Civil Code § 1798.83,[6] for which $3,000 is, in fact, the *maximum* penalty that can be awarded. Miller v. Hearst Commc'ns Inc., 554 F.App'x 657, 658 (9th Cir. 2014); Cal, Civ. Code §1798.84, subd. (c).

Here again, Gonzalez has prayed without caveat for a penalty under a statute that specifies a maximum penalty, while also alleging facts that appear, in light of relevant case law, to be sufficient to justify the maximum award. The Court therefore finds that Gonzalez could reasonably recover the maximum penalty if she prevails on her individual CITA claim in this action and assigns $30,000 to Gonzalez's claim for a penalty under CITA for purposes of the amount-in-controversy calculation. See Arias, 936 F.3d at 927; Chavez, 888 F.3d at 418.

## II.  Statutory Penalty Under Section 530.8 of the California Penal Code

Section 530.8 of the California Penal Code gives victims of identity theft the right to certain information – like transaction records and account applications – relating to accounts opened in their names by unauthorized persons. See Cal. Penal Code § 530.8. Subdivision (a) of Section 530.8 governs requests for such information and provides that the person or entity with which an unauthorized account was opened "shall provide copies of all paper records, records of telephone applications or authorizations, or records of electronic applications or authorizations required by [Section 530.8, subd. (a)], without charge, within 10 business days of receipt of the person's request and submission of the required copy of the police report and identifying information." Cal. Penal Code § 530.8, subd. (a). Subdivision (d)(2) of Section 530.8 provides that, "[i]n addition to any other civil remedy available, the victim may bring a civil action against the entity for damages, injunctive relief or other equitable relief, and a penalty of one hundred dollars ($100) per day of noncompliance, plus reasonable attorneys' fees." Cal. Penal Code § 530.8, subd. (d)(2).

Gonzalez alleges that Comenity "willfully and knowingly violated Penal Code section 530.8, subdivision (a)," Doc. No. 1, Ex. A ¶ 55, and prays for "actual damages according to proof

---

[6] See Heidorn v. BDD Mktg. & Mgmt. Co., LLC, 2013 WL 6571168, *1 (N.D. Cal. Oct. 9, 2013); Heidorn v. BDD Mktg. & Mgmt. Co., LLC, 2013 WL 6571629, *17 (N.D. Cal. Aug. 19, 2013), report and recommendation adopted, 2013 WL 6571168 (N.D. Cal. Oct. 9, 2013) (recommending "an award of $3,000 as a penalty" under "California's Shine the Light Law").

12

and a penalty as authorized by Penal Code section 530.8, subdivision (d)(2), to be paid to [Gonzalez] and each Information Request Class member; injunctive relief and such other equitable relief as the Court may deem appropriate; and reasonable attorneys' fees and costs." Id., Ex. A, Prayer for Relief ¶ 2.

The dispute here has to do with how long the $100 per day penalty set forth in Section 530.8, subdivision (d)(2), should run for purposes of the amount-in-controversy calculation. Comenity contends that, per Gonzalez's claim, the penalty began accruing at a rate of $100 per day on September 20, 2018 and totaled $17,500 as of the removal of this action on March 14, 2019. Doc. No. 1 ¶ 14. Further, Comenity contends that any portion of the penalty that accrues following the removal date should be used – along with the pre-removal portion of the penalty – in calculating the amount in controversy. Doc. No. 17 at 11:1-6. According to Comenity, Gonzalez stands to recover a penalty of $61,800 (including the $17,500 that accrued as of the removal date) on her Section 530.8 claim if she prevails at trial and trial concludes on June 1, 2020. Doc. No. 17 at 11:4-6.

Gonzalez does not dispute that under her view of Section 530.8 a penalty of $17,500 accrued through the removal date or that the penalty has continued to accrue at the statutory rate of $100 per day since removal. Further, Gonzalez has not indicated that she will not seek to recover the post-removal portion of the penalty. Gonzalez takes the position, however, that post-removal penalties under Section 530.8 should not be considered "in this situation" because they are too "speculative" and because they are based on the "unreasonable" assumption that Comenity will not produce the materials required under Section 530.8 until the completion of trial. Doc. No. 12, Part 3.B.(2). "The accrual of any penalties *will* stop, soon," Gonzalez argues, because the "reality of litigation" is that Comenity will produce everything required under Section 530.8 in discovery, before any trial takes place. Id. at 13:3-5.

The Court does not agree with Gonzalez that future penalties under Section 530.8 are too speculative to include in the amount-in-controversy calculation. See Brady v. Mercedes-Benz USA, Inc., 243 F. Supp. 2d 1004, 1011 (N.D. Cal. 2002) ("While an estimate of the amount in controversy must be made based on facts known at the time of removal, that does not imply that

items such as future income loss, damages, or attorneys fees likely to be incurred cannot be estimated at the time of removal."). The question here is simply what – if any – additional accruals could "reasonably be anticipated at the time or removal" given the fact that the Section 530.8 materials have not yet been produced. See Simmons v. PCR Tech., 209 F. Supp. 2d 1029, 1035 (N.D. Cal. 2002); see also, Chavez, 888 F.3d at 414–15.

On that question, Comenity asserts that it "need not produce anything voluntarily and may await a document request" served under the Federal Rules of Civil Procedure, Doc. No. 17 at 13 n.19, but it does not state outright that it will not produce the materials required under Section 530.8 in discovery. Thus, the Court will not assume, as Comenity urges, that the penalty will continue to accrue through trial. See Simmons, 209 F. Supp. 2d at 1032 (declining "to project future wage loss until a hypothetical trial date"). By the same token, however, Gonzalez concedes that penalties did not stop accruing at the time of removal and that some legal process may be required to secure the contested materials from Comenity and stop the accrual of penalties. Doc. No. 12 at 13:3-5. Thus, it would be reasonable – and entirely consistent with the "reality of litigation" – to expect at the time of removal that some time would pass before Comenity's production was complete and the penalty ceased to run under Section 530.8. Cf. Brady, 243 F.Supp.2d at 1011 (finding that the assumption that a defendant will capitulate immediately to a plaintiff's demands "does not comport with the reality of litigation").

Taking into consideration the time required to serve and respond to discovery requests, as well as the likelihood of motion practice in connection with remand, discovery and such, the Court finds that, at the time of removal, it would be reasonable to allow at least four months for Comenity to produce the Section 530.8 materials, particularly since Comenity refused to do so for several months leading up to the filing of this action. Assuming an average of 30 days per month with the penalty accruing at the undisputed rate of $100 per day, $12,000 is a reasonable estimate of the post-removal portion of the penalty under the Section 530.8 claim. In total, therefore, the Court finds that $29,500 ($17,500 +$12,000 = $29,500) is the proper penalty to assign to Gonzalez's individual claim under Section 530.8 for purposes of the amount-in-controversy analysis.

### III. Attorneys' Fees

Attorneys' fees may be used in calculating the amount in controversy if recoverable by statute or contract, Galt G/S v. JSS Scandinavia, 142 F.3d 1150, 1155–56 (9th Cir. 1998), including "future attorneys' fees" as well as attorneys' fees incurred prior to removal. Fritsch, 899 F.3d at 794; see also Simmons, 209 F.Supp.2d at 1034–35 (stating that "the measure of fees should be the amount that can reasonably be anticipated at the time of removal, not merely those already incurred").

"Only reasonable fees will be included in the calculation." Lippold v. Godiva Chocolatier, Inc., 2010 WL 1526441, *3–4 (N.D. Cal. Apr. 15, 2010) (citation omitted). "The Court determines a reasonable fee award using the lodestar method, which calculates a reasonable award by multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate." Barkett v. Sentosa Properties LLC, 2015 WL 5797828, at *4 (E.D. Cal. Sept. 30, 2015) (citing Gonzalez v. City of Maywood, 729 F.3d 1196, 1202 (9th Cir. 2013) and Camacho v. Bridgeport Fin., Inc., 523 F.3d 973, 978 (9th Cir.2008)).

"In determining a reasonable hourly rate, the district court should be guided by the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." Ingram v. Oroudjian, 647 F.3d 925, 928 (9th Cir.2011) (per curiam) (citation and internal quotation marks omitted). "Generally, when determining a reasonably hourly rate, the relevant community is the forum in which the district court sits." Camacho, 523 F.3d at 979 (citing Barjon v. Dalton, 132 F.3d 496, 500 (9th Cir.1997)). Thus, when a case is filed in this Court, the Eastern District of California, Fresno Division, is the appropriate forum to establish the lodestar hourly rate. See Jadwin v. County of Kern, 767 F.Supp.2d 1069, 1129 (E.D. Cal. 2011).

In setting a rate, courts may rely on, *inter alia*, affidavits submitted by counsel, see, e.g., Blum v. Stenson, 465 U.S. 886, 898 (1984); United Steelworkers of Am. v. Phelps Dodge Corp., 896 F.2d 403, 407 (9th Cir. 1990); awards in comparable cases, Nadarajah v. Holder, 569 F.3d 906, 917 (9th Cir. 2009) (finding that courts may rely on decisions by other courts awarding similar rates for work in the same geographical area by attorneys with comparable levels of

experience); and its "own knowledge of customary rates and [] experience concerning reasonable and proper fees." Fritsch, 899 F.3d at 795.

On class claims, attorneys' fees "cannot be allocated solely to [named] plaintiffs for purposes of amount in controversy." Gibson, 261 F.3d at 942–43 (where statute provides for attorneys' fees as a "'bounty' for plaintiffs who successfully litigate in the public interest," they should not be allocated solely to the representative plaintiff for purposes of amount in controversy (citations omitted)); see also Steenhuyse v. UBS Fin. Servs., Inc., 317 F. Supp. 3d 1062, 1072–73 (N.D. Cal. 2018).

In applying the lodestar method here, Comenity "submits that a $300 hourly rate is the rate that counsel for Gonzalez would likely seek" in this action, "given their experience." Doc. No. 17:8-9. That assertion is based on various cases with some similarities to the case at bar and on a declaration from a 2016 class action in the Northern District of California stating that Ms. Dumont's billing rate was $300 per hour. Doc. No. 17 at 14:8-9. Further, Comenity asserts that Gonzalez will "seek to recover **at least** 383 hours in connection with litigating her individual and class claims through trial," Doc. No. 17 at 14:14-15 (emphasis original), including "17.5 hours on case investigation and ongoing research," "14 hours preparing the Complaint and any amended Complaints," "12 hours preparing the Motion to Remand, reply and attending the hearing," and so forth. Doc. No. 18 at 14 n.22. That assertion is based on actions that have some similarities to the case at bar and on an affidavit prepared by a veteran attorney with many years of experience litigating the types of claims at issue here. Doc. No. 17-1. Finally, Comenity estimates that one-quarter of that 383-hour total would allocable to the CITA claim (the one purely individual claim in this action) and thus asserts that Gonzalez would seek to recover $28,725 ($300 per hour x 95.75 hours) in attorneys' fees attributable to her individual claim alone through trial. Doc. No. 17 at 16:11-14, 17:3-4. According to Comenity, this is a conservative estimate in comparison to *Seungtae Kim v. BMW Financial Services NA, LLC*, a 2015 CITA case in which $280,934.90 in attorney fees were awarded following a four-day jury trail. Doc. No. 17 at 17:5-8.

Gonzalez, on the other hand, argues that Comenity's calculation of attorney fees is "unsound" because Comenity has failed to show that a full one quarter of attorney time is properly

16

1  allocated to the CITA claim or even that the CITA claim "would increase the time needed" to

2  litigate the case.  Doc. No. 18 at 15:7-13.  According to Gonzalez, the "correct approach" to

3  estimating fees in this case "would have been to divide the fees necessary to litigate the class

4  claims among the class members [footnote omitted], and then list and assign dollar amounts to any

5  additional tasks made necessary by the presence of the non-class claim."  Doc. No. 17:3-6.

6  Finally, Gonzalez faults Comenity for failing "to address the likelihood of settlement."  Doc. No.

7  at 19:15-16.

8        The Court has already found above that the following amounts are properly included in the

9  amount in controversy calculation: (i) the maximum statutory penalty of $1,000 for the Rosenthal

10  Act claim; (iii) the maximum statutory penalty of $30,000 for the CITA claim; and (ii) an

11  estimated penalty of $29,500 for the Section 530.8 claim.  Together, those penalties come to

12  $60,500.  Thus, not counting any of the other relief Gonzalez is seeking (which includes both

13  actual damages and equitable relief), the jurisdictional minimum in this action would be satisfied

14  by an attorneys' fees award of just $14,500.

15        As noted above, Comenity uses an hourly rate of $300 in its calculations.  Gonzalez does

16  not take issue with that rate and, indeed, it is consistent with prevailing norms in Fresno.  See e.g.,

17  Barkett v. Sentosa Props. LLC, 2015 WL 5797828, *4 (E.D. Cal. Sept. 30, 2015) ("Courts within

18  the Eastern District of California's Fresno division have found that a reasonable range of

19  attorney's fees is between $250 and $380, with the highest rates generally reserved for those

20  attorneys who are regarded as competent and reputable and who possess in excess of 20 years of

21  experience." (collecting cases) (internal quotation marks omitted)); see also, Estate of Crawley v.

22  Kings Cnty., 2015 WL 4508642, *7 (E.D. Cal. July 24, 2015) ($330 hourly rate appropriate for

23  attorney with approximately 15 years of experience based on averaging of rates applied in other

24  cases); Silvester v. Harris, 2014 WL 7239371, *5 (E.D. Cal. Dec.17, 2014) ($375 hourly rate for

25  attorneys with 18 and 20 years of experience; $350 for attorney with 11 years of experience, $285

26  for attorney with ten years of experience); Jadwin v. County of Kern, 767 F. Supp. 2d 1069, 1134

27  (E.D. Cal. 2011) (awarding hourly rates of $350 for attorney with 14 years of experience, $275 for

28  attorney with 11 years of experience, and $295 for a contract attorney with 18 years of experience

in employment action).

Applying that undisputed rate of $300 per hour, Gonzalez's counsel would accrue $15,000 in attorney fees – more than enough to satisfy the jurisdictional minimum in this case – after just 50 hours of work on the CITA claim. See Lippold, 2010 WL 1526441, *3–4 (noting that "at a rate of $400/hour, attorneys' fees would reach $40,000 after just 100 billable hours"). Particularly in light of the substantive differences between the CITA claim (which requires discovery as to whatever investigation Comenity conducted in response to Gonzalez's claim of identity theft) and the other three claims (which require no such discovery), the Court finds it is more likely than not that at least 50 hours of attorney time will be required to prosecute Gonzalez's CITA claim, even if this case were to settle early. See Fritsch, 899 F.3d at 795-96 (recognizing the expertise of district courts in estimating the number of hours reasonably expended on litigation); Simmons, 209 F.Supp.2d at 1034–35 (finding that future attorneys' fees could not "be precisely calculated" but that the litigation at issue would "undoubtedly require substantial effort from counsel"); see also, Washington, 2018 WL 4005447, *9 (awarding "$58,400 ($400 x 146 hours)" in attorney fees on default judgment for the work of one attorney in an individual action involving claims under the CITA, the Rosenthal Act and the Fair Debt Collection Practices Act (the federal equivalent of the Rosenthal Act)).

### IV. ACTUAL DAMAGES & EQUITABLE RELIEF

While no quantification has been provided in the Complaint or elsewhere, Gonzalez also seeks actual damages and equitable relief in connection with the claims discussed above, as well as equitable relief in connection with her claim under Section 17200, et seq. of the California Business and Professions Code, further supporting the Court's finding that more than $75,000 is at stake in this litigation. See Gonzales, 840 F.3d at 648–49 (finding that the "amount at stake" in litigation involves anything other than interest and costs that "entail[s] a payment by the defendant," including compensatory damages and "the cost of complying with an injunction" (citations and internal quotation marks omitted)).

### V. CONCLUSION

For the foregoing reasons, the Court finds that the amount in controversy in this action

properly includes the maximum statutory penalties for Gonzalez's claims under the Rosenthal Act and the CITA, as well as a reasonable estimate of future penalties under Section 530.8 of the California Penal Code. The Court further finds that these penalties, combined with a reasonable estimate of future attorneys' fees attributable solely to Gonzalez's CITA claim, exceed the $75,000 jurisdictional minimum under 28 U.S.C. § 1442(b), even without factoring in the other types of relief Gonzalez is seeking. Therefore, the Court properly has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) and remand is not warranted.

## **ORDER**

Accordingly, IT IS HEREBY ORDERED that Gonzalez's motion to remand (Doc. No. 11) is DENIED.

IT IS SO ORDERED.

Dated: __October 21, 2019__       _____
                                   SENIOR DISTRICT JUDGE