# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **LORI ANN GONZALEZ, individually and on behalf of others similarly situated,**<br><br>**Plaintiff,**<br><br>v.<br><br>**COMENITY BANK, DOES 1-30,**<br><br>**Defendants.** | CASE NO. 1:19-CV-00348-AWI-EPG<br><br>**ORDER ON DEFENDANT COMENITY BANK'S MOTION TO COMPEL ARBITRATION**<br><br>(Doc. No. 22) |

## **INTRODUCTION**

This is a putative class action in which Plaintiff Lori Ann Gonzalez ("Gonzalez") alleges that Defendant Comenity Bank ("Comenity") has violated California statutes relating to identity theft in connection with credit cards branded for a clothing retailer called "The Limited." Comenity contends that an arbitration agreement applies and has brought a motion for an order compelling arbitration pursuant to the terms of that agreement. For the reasons set forth below, the Court will deny Comenity's motion to compel arbitration without prejudice pending a summary determination as to the existence of an arbitration agreement.

## **BACKGROUND**

This action involves a credit card account (the "Account") issued by Comenity and branded for a clothing retailer called "The Limited." Doc. No. 1, Ex. A (Complaint). Gonzalez contends that she did not open the Account and filed an action against Comenity in Fresno County

Superior Court alleging various forms of misconduct on Comenity's part in connection with her claim of identity theft. Id., Ex. A. For example, Gonzalez alleges that Comenity "pursued [her] for a debt she did not owe" on the Account; "ignored her when she said the account was not hers"; and "ignored her requests for information about the alleged debt, violating California laws for how creditors and debt collector[s] must respond to reports of identity theft." Id., Ex. A ¶ 1. Further, Gonzalez alleges that Comenity failed to notify her that her claim of identity theft with respect to the Account "must be in writing," id., Ex. A, ¶ 52; failed to provide "information and/or documents" Gonzalez requested with respect to the Account, id., Ex. A ¶ 55; and "failed to diligently investigate [Gonzalez's] notification of identity theft" with respect to the Account. Id., Ex. A ¶ 69.

Based on these and other such allegations, Gonzalez brought claims against Comenity under the California Identity Theft Act ("CITA"), California's Rosenthal Fair Debt Collection Practices Act (the "Rosenthal Act"), the California Penal Code, and California's Unfair Competition Law ("UCL"). Id., Ex. A, pp. 7-10. The CITA claim is brought individually, while the claims under the Rosenthal Act, Penal Code and UCL are brought individually and on a class basis. Id. Comenity removed the action to this Court based on diversity jurisdiction on March 14, 2019, see Doc. No. 1, and later filed the instant motion to compel arbitration. See Doc. No. 22. The Court denied Gonzalez's motion to remand in an Order dated October 21, 2019, Doc. No. 40, and now addresses Comenity's motion to compel arbitration.

## DEFENDANT'S MOTION TO COMPEL ARBITRATION

Comenity argues that the Court is required under the Federal Arbitration Act ("FAA") to send this action to arbitration in its entirety because the agreement governing the Account (the "Credit Card Agreement") includes a valid and enforceable arbitration provision (the "Arbitration Provision") that encompasses all four of Gonzalez's claims and bars her from arbitrating any claims on a class basis. Doc. No. 22, Part III.A. Comenity also seeks a stay of this action pending arbitration of Gonzalez's claims. Id., Part III.C.

According to Comenity, the "totality of the evidence" shows that Gonzalez entered into the Credit Card Agreement – and manifested assent to the Arbitration Provision – because she opened,

used and managed the Account; was provided with the Credit Card Agreement on two occasions; and did not opt out of the Arbitration Provision. Id., Part III.A.3.

In support of this argument, Comenity filed, *inter alia*, a declaration (the "Comenity Declaration") supported by business records and executed by a company paralegal with knowledge of Comenity's[1] records and record-keeping practices, Doc. No. 22-1 ¶ 3, that shows the following:[2]

- The Account was opened on or about July 26, 2016 through an online application containing Gonzalez's name, home address, date of birth, social security number and phone number, Doc. No. 22-1, ¶¶ 6, 8, 21;
- The Credit Card Agreement was displayed on-screen at the time the online application for the credit card was submitted, id. ¶¶ 7-8;
- Comenity mailed numerous items relating to the Account to Gonzalez's home address after the application for the Account had been submitted online – including the Credit Card Agreement, more than two dozen billing statements, several letters, and the credit card itself – and none of these items were returned to Comenity as undeliverable, id. ¶¶ 8-9, 18a;
- The Account was used to make purchases that posted in November 2016 and December 2016, id. ¶ 16;
- An online bill pay account was setup for the Account in December 2016 using Gonzalez's email address, id. ¶ 15;
- Payments on the Account were scheduled through the online bill pay account in December 2016, January 2017 and April 2017, id. ¶ 16;

---

[1] Two entities were apparently involved in approving, issuing and servicing the Account: Comenity Bank (the named Defendant in this action) and Comenity Servicing LLC, which performs "account-related functions" – like issuing billing statements and collecting amounts due – for Comenity Bank. The Court refers to both entities as "Comenity" in summarizing the contents of the Comenity Declaration, but elsewhere in this Order, the term "Comenity" refers to Defendant Comenity Bank, unless otherwise noted.

[2] Gonzalez raised evidentiary objections to paragraphs 6, 15 and 16 of the Comenity Declaration, wherein Comenity states that Gonzalez herself took certain action with respect to the Account. Doc. No. 29. The Court does not rely on such portions of the Comenity Declaration in deciding this motion and Gonzalez's objections are therefore overruled as moot. See Lavin v. United Techs. Corp., 2014 WL 3547237, at *2 n.2 (C.D. Cal. July 17, 2014).

- Numerous telephone calls were placed to Comenity between August 2016 and April 2017 from the phone number in the online application for the Account, id. ¶ 14; and
- On June 28, 2017, Comenity called Gonzalez at the phone number in the online application for the Account and spoke to her about the delinquent balance on the credit card. Id. ¶ 17.

Further, the Comenity Declaration attaches an authenticated version of the Credit Card Agreement, as sent to Gonzalez's home address and as displayed online at the time the online application for the Account was submitted. The Arbitration Provision in the Credit Card Agreement contains, *inter alia*, the following paragraphs:

> **C. Arbitration provision.**
> **READ THIS ARBITRATION PROVISION CAREFULLY. IF YOU DO NOT REJECT THIS ARBITRATION PROVISION IN ACCORDANCE WITH PARAGRAPH C.1. BELOW, IT WILL BE PART OF THIS AGREEMENT AND WILL HAVE A SUBSTANTIAL IMPACT ON THE WAY YOU OR WE WILL RESOLVE ANY CLAIM WHICH YOU OR WE HAVE AGAINST EACH OTHER NOW OR IN THE FUTURE.**
>
> **1. Your Right to Reject: If you don't want this Arbitration Provision (and any prior arbitration agreement between you and us ("Prior Arbitration Agreement")) to apply, you may reject it by mailing us a written rejection notice which gives the name of each Cardholder and contains a statement that you (both of you, if more than one) reject the Arbitration Provision of this Agreement. The rejection notice must be sent to us at Comenity Bank, PO Box 182422, Columbus, Ohio 43218-2422. A rejection notice is only effective if it is signed by you (all of you, if more than one) and if we receive it within thirty (30) calendar days after the date we first provide you with a credit card agreement or written notice providing you a right to reject this Arbitration Provision. Your rejection of this Arbitration Provision will not affect any other provision of this Agreement or your ability to obtain credit.**
>
> **2. Parties Subject to Arbitration:** Solely as used in this Arbitration Provision (and elsewhere in this Agreement), the terms 'we,' 'us,' and 'our' mean (a) Comenity Bank, any parent, subsidiary or affiliate of the Bank and the employees, officers and directors of such companies (the 'Bank Parties'); and (b) any other person or company that provides any services in connection with this Agreement if you assert a Claim against such other person or company at the same time you assert a Claim against any Bank Party.

**3. Covered Claims:** 'Claim' means any claim, dispute or controversy between you and us that in any way arises from or relates to this Agreement, the Account, the issuance of any Card, any rewards program, any prior agreement or account. 'Claim' includes disputes arising from actions or omissions prior to the date any Card was issued to you, including the advertising related to, application for or approval of the Account. 'Claim' has the broadest possible meaning, and includes initial claims, counterclaims, cross-claims and third-party claims. It includes disputes based upon contract, tort, consumer rights, fraud and other intentional torts, constitution, statute, regulation, ordinance, common law and equity (including any claim for injunctive or declaratory relief. . . .

**4. Starting an Arbitration:** Arbitration may be elected by any party with respect to any Claim, even if that party has already initiated a lawsuit with respect to a different Claim ….

**7. Prohibition Against Certain Proceedings: IF YOU OR WE ELECT TO ARBITRATE A CLAIM: (1) NEITHER YOU NOR WE MAY PARTICIPATE IN A CLASS ACTION IN COURT OR IN CLASS-WIDE ARBITRATION, EITHER AS A PLAINTIFF, DEFENDANT OR CLASS MEMBER; (2) NEITHER YOUR NOR WE MAY ACT AS A PRIVATE ATTORNEY GENERAL IN COURT OR IN ARBITRATION; (3) CLAIMS BROUGHT BY OR AGAINST YOU MAY NOT BE JOINED OR CONSOLIDATED WITH CLAIMS BROUGHT BY OR AGAINST ANY OTHER PERSON; AND (4) THE ARBITRATOR SHALL HAVE NO POWER OR AUTHORITY TO CONDUCT A CLASS-WIDE ARBITRATION, PRIVATE ATTORNEY GENERAL ARBITRATION OR MULTIPLE-PARTY ARBITRATION.**

Doc. No. 22-1 ¶ 9, Ex. B., Section I.C. (emphasis original).

Further, the first section of the Credit Card Agreement contains the following provision, calling attention to the Arbitration Provision:

> **Section I of this Agreement also includes a Jury Trial Waiver and an Arbitration Provision in the event of a dispute.**
> - **You have a right to reject this Arbitration Provision.**
> - **If you do not reject this Arbitration Provision, it will be part of this Agreement and will:**
>   - **Eliminate your right to a trial by jury; and**
>   - **Substantially affect your rights, including your right to bring, join in or participate in class proceedings.**

Doc. No. 22-1 ¶ 9, Ex. B (first page, under section titled "Your The Limited Credit Card account agreement") (emphasis original). According to the Comenity Declaration, Gonzalez never provided written notice rejecting the Arbitration Provision. Doc. No. 22-1 ¶ 11.

5

1 | In the alternative to an order compelling arbitration and staying this action, Comenity
2 | seeks a summary trial on the question of whether the Arbitration Provision applies here. See Doc.
3 | No. 22 n.16.

*Gonzalez's Opposition*

Gonzalez contends that the Court cannot send this action to arbitration – or undertake a summary determination as to the applicability of the Arbitration Provision – because Comenity has failed to make a prima facie showing that she entered into the Credit Card Agreement. Doc. No. 27, Part 3.E. Specifically, Gonzalez argues that the facts set forth in support of Comenity's motion to remand "show[] only" that the Account was opened, and do not show "*who* opened the account." Id. at 14:8-9 (emphasis original). Further, Gonzalez argues that Comenity has failed to establish that she manifested agreement to the terms of the Arbitration Provision through conduct, which, according to Gonzalez, requires showing that she "*received* an arbitration agreement" and "was *aware* of a contractual relationship with [Comenity]." Id. at 16:17-22 (emphasis original).

In the declaration supporting her opposition (the "Gonzalez Declaration"),[3] Gonzalez states that she did not "fill out any online account application or any kind of application for a 'The Limited' credit card account"; that she "never saw any terms and conditions of any 'The Limited' credit card agreement on any computer screen"; and that she "did not open or use a 'The Limited' credit card account." Doc. No. 28 ¶¶ 7-9. She further states that she "did not sign up for online account management for a 'The Limited' card account, or schedule or make payments"; that she "never saw any 'The Limited' Credit Card Account Agreement before [Comenity] filed this Motion"; that she "never saw any account statements for any 'The Limited' credit card account until after [she] learned that [a] fraudulent account had been opened in [her] name"; and that "[i]f [she] had seen any mail addressed to [her] from 'Comenity Bank' or 'The Limited' before [she] knew that [] fraudulent accounts had been opened in [her] name, [she] probably would have considered it junk mail and thrown it away without opening it or paying attention to it, because

---

[3] Comenity raised evidentiary objections to paragraphs 2, 3, 4, 5, 12-13, 20-22, 24-25, 27-32 of the Gonzalez Declaration as well as Exhibits A and B thereto. Doc. No. 31-1. Comenity also objects to certain statements in Gonzalez's opposition to the motion to compel arbitration. Id. The Court does not rely on any of the content at issue in deciding this motion and Comenity's objections are therefore overruled as moot. See Lavin, 2014 WL 3547237 at *2 n.2.

6

[she] did not have any account with those companies." Id. ¶¶ 11, 12, 13, 17. In addition, Gonzalez suggests her brother may have intercepted mail from Comenity because he "knew [her] work schedule in 2016 and 2017" and would "come over to visit … on a regular basis."[4] Id. ¶¶ 24-25, 27, 30.

Gonzalez does not address Comenity's contention that the claims in this case fall within the scope of the Arbitration Provision or Comenity's contention that the Arbitration Provision requires her to arbitrate her claims on an individual – as opposed to class – basis.

*Legal Standard*

The Federal Arbitration Act ("FAA") provides that written agreements to arbitrate disputes arising out of transactions involving interstate commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2; see Circuit City Stores v. Adams, 279 F.3d 889, 892 (9th Cir. 2002). Further, the FAA allows "a party aggrieved by the alleged … refusal of another to arbitrate under a written agreement for arbitration [to] petition any United States district court ... for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4; see Chiron Corp. v. Ortho Diagnostic Sys., Inc., 207 F.3d 1126, 1130 (9th Cir. 2000).

The FAA "leaves no place for the exercise of discretion by a district court" in deciding a motion to compel arbitration. Chiron, 207 F.3d at 1130 (quoting Dean Witter Reynolds Inc. v. Byrd, 470 U.S. 213, 218 (1985)) (internal quotation marks omitted). "The court's role under the [FAA] is [] limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." Chiron, 207 F.3d at 1130 (citing, *inter alia*, 9 U.S.C. § 4 and Simula, Inc. v. Autoliv, Inc., 175 F.3d 716, 719–20 (9th Cir.1999)). "If the response is affirmative on both counts, then the [FAA] requires the court to enforce the arbitration agreement in accordance with its terms." Chiron, 207 F.3d at 1130; see Lifescan, Inc. v. Premier Diabetic Servs., 363 F.3d 1010, 1012 (9th Cir. 2004).

"Issues regarding the *validity or enforcement* of a putative contract mandating arbitration should be referred to an arbitrator, but challenges to the *existence* of a contract as a whole must be

determined by the court prior to ordering arbitration." Sanford v. Memberworks, Inc., 483 F.3d 956, 962 & n.8 (9th Cir. 2007) (citation omitted) (emphasis original). In other words, it is the role of the court to determine whether an arbitration agreement was formed. See Three Valleys Mun. Water Dist. v. E.F. Hutton & Co., 925 F.2d 1136, 1140-41 (9th Cir.1991).

On a motion to compel arbitration under the FAA, courts apply a standard similar to the summary judgment standard applied under Rule 56 of the Federal Rules of Civil Procedure. See Alvarez v. T-Mobile USA, Inc., 2011 WL 6702424, *3 (E.D. Cal. Dec. 21, 2011) (citing Concat LP v. Unilever, PLC, 350 F. Supp. 2d 796, 804 (N.D. Cal. 2004)); Perez v. Maid Brigade, Inc., 2007 WL 2990368, *3 n.4 (N.D. Cal. Oct. 11, 2007); Ferguson v. Countrywide Credit Indus., 2001 WL 867103, n.1 (C.D. Cal. 2001), aff'd, 298 F.3d 778, 782 (9th Cir. 2002).[5] A party seeking to compel arbitration under the FAA "must make a prima facie showing that an agreement to arbitrate existed before the burden shifts to the party opposing arbitration to put the making of that agreement 'in issue.'" Blau v. AT & T Mobility, 2012 WL 10546, *3 (N.D. Cal. Jan. 3, 2012) (quoting Hines, 380 F. App'x at 24 (internal quotation marks omitted)); see also, Doctor's Assocs., Inc. v. Distajo, 107 F.3d 126, 129-30 (2d Cir.1997). Courts construe "all facts and reasonable inferences that can be drawn from those facts in a light most favorable to the non-moving party." Tanis v. Sw. Airlines, Co., 2019 WL 1111240, *1–2 (S.D. Cal. Mar. 11, 2019) (quoting Chavez v. Bank of Am., 2011 WL 4712204, *3 (N.D. Cal. Oct. 7, 2011) (internal quotation marks omitted). "If the court is 'satisfied that the making of the agreement for arbitration … is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement.'" Crook v. Wyndham Vacation Ownership, Inc., 2015 WL 4452111, *2 (N.D. Cal. July 20, 2015) (quoting 9 U.S.C. § 4). If,

---

[5] See also, Hines v. Overstock.com, Inc., 380 F. App'x 22, 24 (2d Cir. 2010) ("In the context of motions to compel arbitration ... the court applies a standard similar to that applicable for a motion for summary judgment." (quoting Bensadoun v. Jobe–Riat, 316 F.3d 171, 175 (2d Cir.2003) (internal quotation marks omitted)); Aliron International, Inc. v. Cherokee Nation Industries, Inc., 531 F.3d 863, 865 (D.C. Cir. 2008) ("The district court properly examined [] motion to compel arbitration under the summary judgment standard of Federal Rule of Civil Procedure 56(c), as if it were a request for summary disposition of the issue of whether or not there had been a meeting of the minds on the agreement to arbitrate."); Kaneff v. Delaware Title Loans, Inc., 587 F.3d 616, 620 (3d Cir. 2009) ("A district court decides a motion to compel arbitration under the same standard it applies to a motion for summary judgment.").

however, "there is a genuine issue of material fact as to whether the parties formed an agreement to arbitrate, a court must first resolve that factual dispute before it can, as a matter of law, compel the parties to submit their dispute to arbitration." Tanis, 2019 WL 1111240 at *2 (citing Three Valleys, 925 F.2d at 1140–41); see Grabowski v. Robinson, 817 F. Supp. 2d 1159, 1168 (S.D. Cal. 2011).

**ANALYSIS**

The Court starts the analysis below by determining whether Gonzalez's claims fall within the scope of the Arbitration Provision in the Credit Card Agreement and then addresses the question of whether the Arbitration Provision applies.

**I.      Whether the Arbitration Provision Encompasses the Dispute at Issue**

Assuming "a valid arbitration agreement exists," a court must decide, under the second *Chiron* prong, "whether the agreement encompasses the dispute at issue." Chiron, 207 F.3d at 1130; see Galvan v. Michael Kors USA Holdings, Inc., 2017 WL 253985, *4 (C.D. Cal. Jan. 19, 2017). The Court undertakes this analysis at the threshold, in this instance, to determine whether it is necessary to address the other element of the *Chiron* analysis – contract formation.

"[T]he party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration," Green Tree Fin. Corp. v. Randolph, 531 U.S. 79, 91 (2000), and the FAA "establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983).

By its terms, the Arbitration Provision in the Credit Card Agreement applies to "any claim, dispute or controversy … that in any way arises from or relates to" the Credit Card Agreement or the Account, including "disputes based upon contract, tort, consumer rights, fraud and other intentional torts, constitution, statute, regulation, ordinance, common law and equity …." Doc. No. 22-1, Ex. B, Section I.C. Comenity argues that the claims in this action "plainly fall within the scope of the Arbitration Provision" because they "are based on alleged servicing calls and letters relating to the Account." Doc. No. 22 at 18:19-21. Gonzalez does not address the issue of scope at all.

The claims at issue here are based exclusively on Comenity's alleged failure to comply with applicable law in addressing Gonzalez's claim that she did not open the Account. Gonzalez alleges that Comenity failed to inform her that her identity theft claim as to the Account must be submitted in writing; that Comenity has failed to produce certain documents relating to the Account; and that Comenity failed to diligently investigate her notification of identity theft as to the Account. Thus, the Court finds that the claims at issue in this action "arise[] from or relate[] to" the Account and are therefore subject to arbitration if the Arbitration Provision applies. See Galvan, 2017 WL 253985 at *4 (finding that the "plain language" of the arbitration agreement encompassed the claims at issue); Hoekman v. Tamko Bldg. Prod., Inc., 2015 WL 9591471, *7 (E.D. Cal. Aug. 26, 2015) (finding that "all aspects" of the case were encompassed by "the broad language of the arbitration agreement").

*Whether the Arbitration Provision Permits Arbitration of Claims on a Classwide Basis.*

Comenity further argues that, while the claims in this case are properly subject to arbitration, they can only be arbitrated on an individual – non-class – basis. Doc. No. 22, Part III.B. The Court addresses this argument here since it affects the scope of arbitration.

Although the Court is not aware of a published Ninth Circuit decision on whether it is for the court or the arbitrator to decide whether class claims are arbitrable, other circuit courts have held that the availability of class arbitration is a "gateway matter" for the court to decide in the absence of clear and unmistakable delegation to the arbitrator. See Opalinski v. Robert Half Int'l Inc., 761 F.3d 326, 331-32, 335-36 (3d Cir. 2014); Reed Elsevier, Inc. v. Crockett, 734 F.3d 594, 599 (6th Cir. 2013). Moreover, the Ninth Circuit held in an unpublished decision that the district court did not err in striking the plaintiff's class claims prior to ordering arbitration because "[i]ssues that contracting parties would likely have expected a court to have decided are considered gateway question of arbitrability for courts, and not arbitrators, to decide." Eshagh v. Terminix Int'l Co., 588 Fed. App'x. 703, 704 (9th Cir.2014) (citing Momot v. Mastro, 652 F.3d 982, 987 (9th Cir. 2011)). And the Arbitration Provision expressly states that disputes as to the "Class Action Waiver" are "for a court and not an arbitrator to decide." Doc. No. 22-1, Ex. B, Section I.C.3. The Court will therefore decide whether Gonzalez may arbitrate claims on a

10

classwide basis, assuming the Arbitration Provision applies.  See <u>Chico v. Hilton Worldwide, Inc.</u>, 2014 WL 5088240, *11 (C.D. Cal. Oct. 7, 2014) (holding that "because the parties did not clearly and unmistakably provide otherwise, the Court, rather than the arbitrator, must decide whether the [arbitration agreements] authorize class arbitration").

The Arbitration Provision states in pertinent part:

> **IF YOU OR WE ELECT TO ARBITRATE A CLAIM: (1) NEITHER YOU NOR WE MAY PARTICIPATE IN A CLASS ACTION IN COURT OR IN CLASS-WIDE ARBITRATION, EITHER AS A PLAINTIFF, DEFENDANT OR CLASS MEMBER; (2) NEITHER YOUR NOR WE MAY ACT AS A PRIVATE ATTORNEY GENERAL IN COURT OR IN ARBITRATION; (3) CLAIMS BROUGHT BY OR AGAINST YOU MAY NOT BE JOINED OR CONSOLIDATED WITH CLAIMS BROUGHT BY OR AGAINST ANY OTHER PERSON; AND (4) THE ARBITRATOR SHALL HAVE NO POWER OR AUTHORITY TO CONDUCT A CLASS-WIDE ARBITRATION, PRIVATE ATTORNEY GENERAL ARBITRATION OR MULTIPLE-PARTY ARBITRATION.**

Doc. No. 22-1 ¶ 9, Ex. B., Section I.C. (emphasis original).

It is settled law that "[c]lass action waivers contained within arbitration agreements are valid and enforceable," <u>Hoekman</u>, 2015 WL 9591471 at *7 (citing <u>AT&T Mobility LLC v. Concepcion</u>, 131 S.Ct. 1740 (2011)), and that "a party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party agreed to do so." <u>Oxford Health Plans LLC v. Sutter</u>, 569 U.S. 564, 567 (2013) (quoting <u>Stolt–Nielsen S.A. v. AnimalFeeds Int'l Corp.</u>, 559 U.S. 662, 684 (2010)); <u>see also</u>, <u>Am. Exp. Co. v. Italian Colors Rest.</u>, 570 U.S. 228, 232-33 (2013).  Furthermore, Gonzalez has made no attempt to show that the waiver set forth in the Arbitration Provision should not have effect as written.  Accordingly, the Court finds that the Arbitration Provision does not permit arbitration of claims on a classwide basis, and that Gonazalez may only arbitrate her claims on an individual basis if it is determined that the Arbitration Provision applies.  See <u>Morvant v. P.F. Chang's China Bistro, Inc.</u>, 870 F. Supp. 2d 831, 842 (N.D. Cal. 2012) (finding that "the FAA requires not just compelling arbitration, but compelling arbitration *on an individual basis* in the absence of a clear agreement to proceed on a class basis" (citing <u>Concepcion</u>, 131 S.Ct. at 1748) (emphasis original)).

**II.      Whether an Agreement to Arbitrate Exists**

Having found that the claims in this case are within the scope of the Arbitration Provision

(and that the Arbitration Provision bars the arbitration of claims on a classwide basis), it is necessary to turn to the first prong of the *Chiron* analysis, addressing the question of whether an arbitration agreement exists. See Sanford, 483 F.3d at 962 & n.8 (stating that "challenges to the *existence* of a contract as a whole must be determined by the court prior to ordering arbitration" (emphasis added)); Chiron, 207 F.3d at 1130.

In determining whether an arbitration agreement exists, "federal courts [] apply ordinary state-law principles that govern the formation of contracts." Pokorny v. Quixtar, Inc., 601 F.3d 987, 994 (9th Cir. 2010) (citation and some internal punctuation omitted). Comenity contends that the Court should apply Delaware law to this analysis because there is a choice of law provision calling for Delaware law in the Credit Card Agreement. Doc. No. 22 at 12:10-18. The Court, however, "cannot assume the parties have made such an election." See Aspect Grp. v. Movietickets.com, Inc., 2006 WL 5894608, at *6 (C.D. Cal. Jan. 24, 2006) (citing Restatement (Second) of Conflict of Laws § 188(1) (1988)). Where, as here, "the very question … is whether a contract exist[s] at all," courts "apply the local law of the state with the most significant relationship to the transaction and the parties." Id., 2006 WL 5894608 at *6 (citation and internal quotation marks omitted).

Gonzalez is a resident of California and was in California at the time the Account was opened. Doc. No. 28 ¶ 6. Comenity asserts through a sworn declaration that Gonzalez provided a California address in her online application for the Credit Card, Doc. No. 22-1 ¶ 8, and that Comenity sent materials relating to the Account – including the Credit Card Agreement – to Gonzalez at that California address. Id. ¶ 9. This action was filed in California state court, based entirely on California statutes. Doc. No. 1, Ex. A. And while Comenity is apparently a Delaware state-chartered bank, the payment address on the billing statements for the credit card is in Texas – not Delaware. Doc. No. 22-1, Ex. D. Accordingly, the Court finds that California has the "the most significant relationship" – and a far greater relationship than Delaware – to the transaction and the parties in this case and thus applies California law to the question of contract formation. See Aspect Grp., 2006 WL 5894608 at *6.

Under California law, "the party seeking to compel arbitration[] has the burden of proving

the existence of an agreement to arbitrate by a preponderance of the evidence," Knutson v. Sirius XM Radio Inc., 771 F.3d 559, 565 (9th Cir. 2014) (citing Rosenthal v. Great W. Fin. Sec. Corp., 14 Cal. 4th 394, 413 (1996)), and mutual assent is a required element of contract formation. Hoekman, 2015 WL 9591471 at *3 (citing Cal. Civ.Code § 1550).[6] "Mutual assent may be manifested by written or spoken words, or by conduct," Knutson, 771 F.3d at 565 (quoting Binder v. Aetna Life Ins. Co., 75 Cal. App. 4th 832, 850 (1999) (internal quotation marks omitted)), and acceptance of contract terms may be implied through action or inaction. Id. (citing Carnival Cruise Lines, Inc. v. Shute, 499 U.S. 585, 593–95 (1991)). Further, "an offeree, knowing that an offer has been made to him but not knowing all of its terms, may be held to have accepted, by his conduct, whatever terms the offer contains." Id. (quoting Windsor Mills, Inc. v. Collins & Aikman Corp., 25 Cal. App. 3d 987, 991 (1972) (internal quotation marks omitted)). "Courts must determine whether the outward manifestations of consent would lead a reasonable person to believe the offeree has assented to the agreement." Id. (citing Meyer v. Benko, 55 Cal. App. 3d 937, 942–43 (1976)).

Comenity contends that Gonzalez entered into the Credit Card Agreement and is bound by the Arbitration Provision because she opened the Account, was shown a copy of the Credit Card Agreement online at the time she submitted her application, received a copy of the Credit Card Agreement by mail at her home address, and used and managed the Account without opting out of the Arbitration Provision. Specifically, the Comenity Declaration[7] sets forth evidence showing that: the personal information in the online application used to open the Account (including the address, phone number and social security number) undisputedly belongs to Gonzalez, Doc. No. 22-1 ¶ 8; an online account for managing the Account was established using Gonzalez's actual email address, id. ¶ 15; there were several attempts to make payments on the credit card through

---

[6] Under California law, the essential elements of a contract are: "(1) parties capable of contracting; (2) their consent; (3) a lawful object; and (4) a sufficient cause or consideration." Olivas v. Hertz Corp., 2018 WL 1306422, *5 (S.D. Cal. Mar. 12, 2018) (citation omitted). The only element in dispute here is consent.

[7] "While the Court may not review the merits of the underlying case '[i]n deciding a motion to compel arbitration, [it] may consider the pleadings, documents of uncontested validity, and affidavits submitted by either party.'" Olivas, 2018 WL 1306422 at *7 (quoting Macias v. Excel Bldg. Servs. LLC, 767 F. Supp. 2d 1002, 1007 (N.D. Cal. 2011) (some internal quotation marks omitted)).

1 the online account, id. ¶ 16; Comenity received calls from Gonzalez and reached Gonzalez at the
2 phone number provided in the application for the Account, id. ¶¶ 14, 17; and a number of
3 documents relating to the Account – including the Credit Card Agreement containing the
4 Arbitration Provision, a "Welcome Kit," more than two dozen billing statements, several letters,
5 and the credit card itself – were mailed to Gonzalez's undisputed home address without being
6 returned to Comenity as undeliverable. Id. ¶¶ 9, 18a. Further, Comenity sets forth evidence
7 showing that the Arbitration Provision was featured prominently in the Credit Card Agreement (as
8 displayed online and sent to Gonzalez's home address) and that Gonzalez did not opt of the
9 Arbitration Provision. Id., ¶ 11 & Ex. B, Section I.C.

10   Gonzalez, for her part, unequivocally denies opening, using, managing or attempting to
11 make payment on the Account and contends that that Comenity "fails to meet its burden of
12 making even a prima facie showing" that it was Gonzalez – "and not someone else" – who
13 opened, used and attempted to make payment on the Credit Card. Doc. No. 27 at 6:2-6.
14 Specifically, she states under oath that she "did not open or use a 'The Limited' credit card
15 account," Doc. No. 28 ¶ 9, and that she "never saw any 'The Limited' Credit Card Account
16 Agreement" before Comenity filed the instant motion to compel arbitration. Id. ¶ 11. In addition,
17 Gonzalez suggests her brother may have intercepted mail from Comenity because he "knew [her]
18 work schedule in 2016 and 2017," and would "come over to visit … on a regular basis." Id. ¶¶ 24-
19 25, 27, 30.

20   On this record, Gonzalez's contention that Comenity failed to make a prima facie case that
21 an arbitration agreement was formed is unavailing. Comenity shows that all of the personal
22 information in the application for the Account (including the phone number, address and social
23 security number) undisputedly belongs to Gonzalez. Comenity further shows that a copy of the
24 Credit Card Agreement prominently featuring the Arbitration Provision was displayed online at
25 the time the Account was opened and sent to Gonzalez's home address. See Paxton v. Macy's W.
26 Stores, Inc., 2018 WL 4297763, *7 (E.D. Cal. Sept. 7, 2018) ("An arbitration clause within a
27 contract may be binding on a party even if the party never actually read the clause.") (quoting
28 Pinnacle Museum Tower Assn. v. Pinnacle Mkt. Dev. (US), LLC, 55 Cal. 4th 223, 236 (2012)).

1  Comenity also shows that the Account was managed through Gonzalez's phone number and an
2  online account using Gonzalez's email address. And Comenity sets forth evidence showing that
3  Gonzalez did not opt out of the Arbitration Provision. See Zarandi v. All. Data Sys. Corp., 2011
4  WL 1827228, *1–2 (C.D. Cal. May 9, 2011) (C.D. Cal. May 9, 2011) (finding failure to opt out of
5  arbitration provision constituted consent to terms of the arbitration provision) (citation omitted).
6  The Court therefore finds that Comenity has set forth a prima facie case that Gonzalez entered into
7  the Credit Card Agreement and assented to the terms of the Arbitration Provision.

8        The Court also finds, however, that Gonzalez's unequivocal, sworn statements that she did
9  not open, use, manage, make payments on, or know about the Account puts the formation of the
10 Credit Card Agreement in issue. Comenity argues that, in some contexts, courts have found that
11 bare denials without corroborating evidence do not create disputed issues of fact.[8] The ultimate
12 inquiry, however, is whether the evidence is such that a reasonable trier of fact could find in favor
13 of the nonmoving party, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986), and
14 Gonzalez's "sworn statements," which must be "taken as true" at this stage of these proceedings,
15 are "direct evidence of the central fact in dispute" on this motion. Id.; see also, In McLaughlin v.
16 Liu, 849 F.2d 1205, 1207–08 (9th Cir. 1988) (citing "the long-standing rule that credibility may
17 not be resolved by summary judgment"). Gonzalez's sworn statements therefore raise a question
18 of fact as to whether the Arbitration Provision applies that cannot be decided on this motion and
19 that must be resolved before the Court can compel the parties to submit their dispute to arbitration.
20 See Tanis, 2019 WL 1111240 at *2; cf. Garbacz v. A.T. Kearny, Inc., 2006 WL 870690, at *3
21 (N.D. Cal. Apr. 4, 2006).

22 **III. CONCLUSION**

23       For the reasons set forth above, the Court finds that, assuming the Arbitration Provision
24 applies, all of the claims in this case are within the scope of the Arbitration Provision and can only
25 be arbitrated on an individual – non-class – basis. The Court further finds, however, that

---

[8] See, e.g., Grabowski, 817 F. Supp. 2d at 1168 ("it is not sufficient for the party opposing arbitration to utter general denials of the facts on which the right to arbitration depends") (quoting Oppenheimer & Co. v. Neidhardt, 56 F.3d 352, 358 (2d Cir. 1995).

15

Gonzalez's sworn statement that she did not open the Account puts the formation of the Credit Card Agreement in issue.  The Court therefore DENIES Comenity's motion to compel arbitration without prejudice and finds that a summary determination is required on the limited question of whether Gonzalez entered into the Credit Card Agreement.  Within 14 days of the date of service of this Order, the parties shall meet and confer as to the scope of discovery necessary to address that question and submit a joint proposal to Magistrate Judge Grosjean for further proceedings consistent with this Order.

## **ORDER**

Accordingly, IT IS HEREBY ORDERED that:

1. Comenity's motion to compel arbitration (Doc. No. 22) is DENIED without prejudice; and
2. Within 14 days of the date of service of this Order, the parties shall meet and confer as to the scope of necessary discovery and submit a joint proposal to Magistrate Judge Grosjean for further proceedings consistent with this Order.

IT IS SO ORDERED.

Dated:   October 30, 2019                  _____
                                            SENIOR  DISTRICT  JUDGE